ATTORNEYS FOR APPELLANTS
Charles R. Shedlak
Susan R. Hanson
Edward P. Benchik
Ethan C. McKinney
South Bend, Indiana

ATTORNEYS FOR APPELLEES
Kathryn A. Brogan
F.L. Dennis Logan
Christopher M. Forrest
Fort Wayne, Indiana

ATTORNEYS FOR CITY OF FORT WAYNE
Timothy A. Manges
Carol Smith
Fort Wayne, Indiana

ATTORNEY FOR ALLEN COUNTY
G. William Fishering
Fort Wayne, Indiana

AMICI CURIAE THE INDIANA
ASSOCIATION OF CITIES AND TOWNS
Thomas K. Downs
Karen L. Arland
Michael J. Lewinski
Hilary G. Buttrick
Indianapolis, Indiana

# In the
# Indiana Supreme Court

### No. 02S00-0409-CV-410

SMDFUND, INC., ET AL.

*Appellants (Plaintiffs below),*

v.

FORT WAYNE-ALLEN COUNTY
AIRPORT AUTHORITY, ET AL.

*Appellees (Defendants below).*

Appeal from the Allen Circuit Court, No. 02C01-0302-PL-12
The Honorable Thomas J. Felts, Judge

On Petition To Transfer Pursuant to Indiana Appellate Rule 56(A)

**August 2, 2005**

**Boehm, Justice.**

The plaintiffs challenge the constitutionality of the statute creating the Fort Wayne-Allen County Airport Authority. The Authority was created in 1985 pursuant to a statute the plaintiffs now contend violates the prohibition in the Indiana Constitution against special legislation. We hold that laches bars this claim.

## Factual and Procedural Background

The Local Airport Authorities Act, Indiana Code section 8-22-3-1 et. seq. (2004), was first enacted in 1959. That act provides a means by which any county, city, town, or other municipal corporation may establish an airport authority. Under the act, the entity wishing to establish an airport authority adopts a resolution or ordinance establishing the authority. I.C. § 8-22-3-1. The registered voters of the district are then provided an opportunity to remonstrate against the establishment of the authority. I.C. § 8-22-3-2. Neither the City of Fort Wayne nor Allen County ever successfully established an airport authority under this statute.

The 1985 General Assembly amended the Local Airport Authorities Act to establish directly a joint city-county airport authority in any county having a population of more than 300,000 but less than 400,000. 1985 Ind. Acts 100, § 1; I.C. § 8-22-3-1.1. The bill created an airport authority to be known as "(name of second class city)-(name of county) Airport Authority." Allen County was and still is the only county that falls within this population parameter, and Ft. Wayne is the only city of the second class in Allen County. As a result, the Fort Wayne-Allen County Airport Authority was formed.

In June, 1985, the City of Fort Wayne and two Fort Wayne citizens filed a complaint for declaratory judgment in the Allen Superior Court contesting the validity of the 1985 legislation. The defendants were the Governor and Attorney General, both state officials. The plaintiffs alleged, among other things, that the legislation was unconstitutional special legislation in violation of Article IV, Section 23 of the Indiana Constitution. Seven days after the suit was filed, the court granted the plaintiffs' motion to dismiss the claim voluntarily with prejudice.

In February, 2003, SMDfund, Inc., Joseph Tocci, and Scott Noble, concerned that the Airport Authority planned to close Smith Field, filed a complaint in Allen Circuit Court against the Airport Authority, the City, and the County seeking a declaratory judgment that the Authority has no legal control over Smith Field, that the statute creating the Authority is unconstitutional special legislation, and that the City, not the Authority, holds legal title to Smith Field. The plaintiffs also sought an injunction preventing the Authority from closing, altering, or destroying Smith Field. The Authority moved to dismiss the complaint and the trial court granted that motion on the ground of mootness. In October 2003, the plaintiffs filed an amended complaint, and the Authority responded with a motion to certify the case as a public lawsuit governed by Indiana Code section 34-6-2-124. The trial court granted that motion. The City and the Authority then filed for summary judgment, arguing that the plaintiffs' claims are barred by the statute of limitations and by the equitable doctrine of laches, and that the Public Lawsuit Act deprives the court of jurisdiction over the plaintiffs' claims. The trial court granted the defendants' motions to dismiss based on the statute of limitations. The plaintiffs appealed and sought transfer to this Court, bypassing the Court of Appeals pursuant to Indiana Rule of Appellate Procedure 56(A). This Court granted transfer.

## I. Laches

"On appeal, the standard of review of a summary judgment ruling is the same as that used in the trial court: summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." Gunkel v. Renovations, Inc., 822 N.E.2d 150, 152 (Ind. 2005). This Court can affirm a grant of summary judgment on any grounds as to which the designated evidence establishes no genuine issue of material fact. See Douglass v. Irvin, 549 N.E.2d 368, 371 (Ind. 1990).

The plaintiffs sought declaratory and injunctive relief. The defendants argue that the claim is barred by the ten-year general statute of limitations and by laches. The laches claim is dispositive. Laches is an equitable doctrine. State ex rel. Attorney General v. Lake Superior Court, 820 N.E.2d 1240, 1256 (Ind. 2005). A declaratory judgment is not necessarily either equitable or legal. Rather, it "is a statutory creation, and by its nature is neither fish nor fowl, neither legal nor equitable." American Safety Equip. Corp. v. J. P. Maguire & Co., 391 F.2d 821,

3

824 (2d Cir. 1968). It was however, "born under equitable auspices and having preponderantly equitable affiliations. . . . it is probably less frequently employed on the law than on the equity side." Edwin Borchard, Declaratory Judgments 347 (2d ed. 1941). The status of a declaratory judgment as legal or equitable is determined by the nature of the suit. Manning v. United States, 146 F.3d 808, 812 (10th Cir. 1998); Davidson v. Van Lenger, 266 N.W.2d 436, 438 (Iowa 1978); Coffee-Rich, Inc. v. Mich. Dep't of Agriculture, 135 N.W.2d 594, 595 (Mich. Ct. App. 1965); Lone Cedar Ranches v. Jandebar, 523 N.W.2d 364, 367 (Neb. 1995); International Health & Life Ins. Co. v. Lewis, 530 P.2d 517, 518 (Or. 1975). 22A Am. Jur. 2d Declaratory Judgments § 2 (2003). "The test is whether, in the absence of a prayer for declaratory judgment, the issues presented should be properly disposed of in an equitable as opposed to a legal action." 22A Am. Jur. 2d Declaratory Judgments § 2. Here, the plaintiffs seek a declaration that the Fort Wayne-Allen County Airport Authority is invalid and has no control over the airports in Fort Wayne. This is the functional equivalent of an injunction against the Authority's operation as an established airport authority. The plaintiffs also seek an injunction preventing the Authority from closing Smith Field. We think both claims are grounded in equity. See Employers Ins. of Wausau v. Shell Oil Co., 820 F.2d 898, 900 (7th Cir. 1987); Boyles v. Hausmann, 517 N.W.2d 610, 614 (Neb. 1994) (action to declare a restrictive covenant invalid is an equitable action); Restatement (Second) of Judgments, § 33 cmt. a (1980) (historically, a suit in equity might be taken to determine the rights of the parties); 42 Am Jur. 2d Injunctions § 1 (2000) ("Injunction is an equitable remedy.").

Because this action is equitable, laches may operate to bar the claim. The general doctrine is well established and long recognized: "Independently of any statute of limitation, courts of equity uniformly decline to assist a person who has slept upon his rights and shows no excuse for his laches in asserting them." Penn Mutual Life Ins. Co. v. Austin, 168 U.S. 685, 698 (1898) (quoting Speidel v. Henrici, 120 U.S. 377, 387 (1887)). Laches requires: "(1) inexcusable delay in asserting a known right; (2) an implied waiver arising from knowing acquiescence in existing conditions; and (3) a change in circumstances causing prejudice to the adverse party." Shafer v. Lambie, 667 N.E.2d 226, 231 (Ind. Ct. App. 1996). The first element is easily satisfied. The statute at issue was enacted in 1985, more than seventeen years before the plaintiffs brought this suit. The plaintiffs argue that they did not delay in exercising a known right because they brought suit only a few months after the Airport Authority voted to close Smith Field. We do

4

not agree. Since 1985, the plaintiffs have been aware of the creation of the Authority, its public funding, and its operation of Smith Field. If they were unaware, they are nonetheless charged with notice of these activities by virtue of their public nature. See Simon v. Auburn, Bd. of Zoning Appeals, 519 N.E.2d 205, 215 (Ind. Ct. App. 1988) (plaintiff is charged with knowledge of the law, so laches barred attack on zoning ordinance); Hutter v. Weiss, 132 Ind. App. 244, 259, 137 N.E.2d 339, 346 (1961) (if circumstances should have put the plaintiff on inquiry and the plaintiff could have easily learned the truth the neglect of failure to make such inquiry will make the plaintiff guilty of laches just as if the facts were known to the plaintiff); See generally 12 Ind. Law Encyclopedia, Equity § 28, at 272 (2001).

The time to bring a claim that the Authority was improperly constituted started with the formation of the Authority. The plaintiffs' contention is that the Authority was created improperly. If the plaintiffs are correct, their claim accrued at the time of the creation of the Authority or at the latest when it began collecting taxes. In State ex rel. Attorney General v. Lake Superior Court, 820 N.E.2d 1240, 1256 (Ind. 2005), this Court addressed a claim that a statute providing special procedures for reassessment of property in Lake County was unconstitutional, but found that laches would bar the claim. We explained: "As early as 1996, the need for reassessment was obvious. . . . The county's taxing authorities are now dependent on the results of that process to move forward, if belatedly, to proceed with the ordinary process of funding government. Under these circumstances laches bars granting of an injunction based on facts and theories available to the plaintiffs three years earlier." Id. Similarly, in this case, the plaintiffs challenge the creation of the Authority over seventeen years ago. In the intervening period the Authority has raised taxes, issued bonds, and done the other things necessary to operate the airports in Allen County, all in reliance on the Authority's valid existence.

Plaintiffs cite Indiana Department of Insurance v. Vernon General Insurance Co., 784 N.E.2d 556 (Ind. Ct. App. 2003), for the proposition that their injury is only recent and therefore not barred by laches. In 2000, the Department of Insurance sued Vernon, a special charter insurance company, for operating on terms that were prohibited under a 1961 law regulating credit accident insurance.[1] Vernon successfully defended on the ground that its 1851 charter permitted

---

[1] Vernon Insurance Company operated under a special legislative charter passed in 1851 shortly before the 1851 Indiana Constitution was adopted. The charter granted Vernon "the right to engage in any and

unregulated operation, and the 1973 law repealing the charter was an unconstitutional impairment of contract. The Court of Appeals rejected the Department's claim that Vernon's challenge to the 1973 repeal of the 1851 statute was barred by laches. The court reasoned, "the record reflects that Vernon has continuously acted in accordance with the terms of its special charter. There is no evidence that Vernon needed to assert the rights under its charter or the 1942 Declaratory Judgment until the Department filed its Statement of Charges on October 17, 2000." Id. at 565. Further, the court found that the acts that granted Vernon's special charter were not repealed when the laws were codified and preserved in 1973. Id.

The plaintiffs reason that just as Vernon's rights were not under attack by the Department until 2000, the plaintiffs here acted promptly when Smith Field was threatened by the Airport Authority. We do not agree. Vernon was operating under a valid statute and until 2000 had no reason to predict that the Department of Insurance might challenge its authority. Indeed it had received the 1942 declaratory judgment and a 1964 letter from the Department that it was exempt from regulation. In contrast to Vernon, the plaintiffs in this case, like all other citizens of Allen County, were directly affected by the statute that created the Fort Wayne-Allen County Airport Authority in 1985. At that point, the Authority began operations, issued bonds, and imposed taxes.

The plaintiffs point out that they, as Allen County taxpayers, pay property taxes for the Authority. Therefore, they argue, like the taxpayers who challenged the constitutionality of the property tax assessment system in State Board of Tax Commissioners v. Town of St. John, 702 N.E.2d 1034 (Ind. 1998), they are entitled to challenge the Authority's existence. Again, we disagree. Town of St. John addressed an allegation that the method of valuing property for tax pur-

---

all forms, kinds, and classes of insurance." Id. at 558. For fifteen years, Vernon operated without regulation. An 1899 law specifically regulated special charter insurance companies, and in 1935, the Indiana Insurance Law created the Department of Insurance and provided a more complicated regulatory scheme. Id. Vernon was inactive from 1910 until it resumed operation in approximately 1940 and obtained a declaration from the trial court that the 1935 Act did not apply to it because the Indiana Constitution prohibited legislation that impaired rights granted to Vernon under its 1851 special charter. Id. No appeal was taken. Id. In 1961, the General Assembly for the first time sought to regulate credit accident insurance, and in 1964, the Department of Insurance sent Vernon a letter recognizing Vernon's status as a special charter insurance company and expressing its opinion that it had no authority over Vernon. Id. The 1973 recodification of the Indiana Code repealed nearly all acts prior to the codification, but provided that it did not affect the "rights, privileges or liabilities accrued, remedies provided, duties imposed, penalties incurred, or proceedings begun before the effectiveness of this Code." Id.

poses violated the requirements of Article X, Section 1 of the Indiana Constitution. It was a claim that the substance of the property tax assessment statute was unconstitutional. Otherwise stated, it was a claim that the property tax assessment system violated the substantive constitutional provision of Article X, Section 1 which requires a "uniform and equal rate of property assessment and taxation." The plaintiffs in this case do not challenge the constitutionality of the substance of the Authority statute. Nor do they challenge any action that the Authority has taken or will take on any ground other than the allegedly defective legislative authorization to create the Authority. They challenge only the procedure by which the Authority statute was passed: the alleged failure of the legislature to abide by the Constitution's prohibition on special legislation.

There is nothing substantively unconstitutional about an airport authority. The plaintiffs here make no claim that the creation of an airport authority is beyond the power of the legislature, and any such claim would be frivolous. Obviously a statute creating an authority in every county would raise no issue of special legislation. And as we explained in City of South Bend v. Kimsey, 781 N.E.2d 683 (Ind. 2003), special legislation may be constitutional if it is based on distinct characteristics of the affected locality. Even if the plaintiffs could establish that Allen County lacked the characteristics justifying special legislation, an authority in Allen County could nevertheless long ago have been constitutionally created by several forms of legislation or local action. Accordingly, for purposes of the laches doctrine, the claim of the plaintiffs here is fundamentally different from that of the taxpayers in Town of St. John.[2]

Seventeen years is surely an unreasonable delay, but laches does not turn on time alone. "A mere lapse in time is insufficient; unreasonable delay which causes prejudice or injury is necessary." Shafer, 667 N.E.2d at 231. The required prejudice may be created "if a party, with knowledge of the relevant facts, permits the passing of time to work a change of circumstances by the other party, laches may bar the claim." State ex rel. Atty. Gen., 820 N.E.2d at 1256 (citing Shafer v. Lambie, 667 N.E.2d 226, 231 (Ind. Ct. App. 1996)). The Authority has established that it would be prejudiced if this suit were allowed to proceed. The prejudice occurred when the

---

[2] It may be that a defense of laches would be available in some circumstances even where the claim is one of unconstitutionality in substance. No claim of laches was asserted in Town of St. John and we are not presented with that question here. We do hold that the defense of laches is available where, as here, the only claim is that a statute was enacted by a procedure that violated the Constitution.

Authority in reliance on the statute issued bonds and again when it took over operation of Smith Field. As the Supreme Court of the United States observed in <u>Penn Mutual</u>, "where a public expenditure has been made, or a public work undertaken, and where one, having full opportunity to prevent its accomplishment, has stood by and seen the public work proceed, a court of equity will more readily consider laches." 168 U.S. at 698. Since its creation, the Authority has incurred debt exceeding $44,000,000 and has entered into a variety of leases, contracts, and other obligations, some of which extend for sixty-eight years into the future. We readily find laches in this seventeen-year delay.

The defendants also argue that the seventeen year delay in bringing suit has prejudiced the Authority by impairing its ability to establish the circumstances justifying special legislation.[3] This is plausible but we need not address it because the other claims of prejudice are sufficient.

In short, laches bars the plaintiffs' claim. Because we hold that the plaintiffs' claim is barred by laches, we need not address the statute of limitations issue which was the basis of the trial court's ruling reaching the same result. We affirm the trial court's entry of summary judgment for the defendants.

## II. Claim of Title to Airport Property

The plaintiffs also argue that they raised a claim at trial court that the City of Fort Wayne, not the Airport Authority, holds title to Smith Field and that the trial court improperly disposed of this argument on summary judgment.

In Count II of the plaintiffs' amended complaint, at paragraph 38, the plaintiffs allege that the City of Fort Wayne holds legal and equitable title to Smith Field and Fort Wayne International Airport. The plaintiffs argue that the Authority's motion for summary judgment did not address this issue and this issue was not properly before the trial court and therefore remains to be resolved. The Authority responds that this "title claim" is nothing more than an allegation that the City owns this property contained in the same count as the claim that the statute creating

---

[3] The Authority contends that there were a variety of unique characteristics justifying creation of an airport authority in Allen County in 1985. The record on this point was undeveloped when the trial court granted summary judgment on other grounds. We need not resolve it here.

8

the Authority is unconstitutional. No basis for that allegation is alleged other than perhaps an inference to be drawn from the claimed unconstitutionality of the Airport Authority Statute. The Authority asserts that the plaintiffs did not contend in the trial court that the title claim was a separate cause of action, so the plaintiffs may not raise on appeal an issue not properly presented to the trial court. When the Authority moved for summary judgment, the plaintiffs responded, also asking for summary judgment. The plaintiffs did not mention this claim in their trial brief, assert it in the statement of disputed facts, or designate any evidence as to it. Rather, it stands simply as an allegation in the claim that we hold barred by laches. We agree that this claim was not properly presented to the trial court as a separate ground for relief, and do not read it as stating a claim.

## Conclusion

The judgment of the trial court is affirmed.

Shepard, C.J., and Dickson, Sullivan, and Rucker, JJ. concur.

9